# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**PERRIN BURSE,**

      **Plaintiff,**

      v.

**CHARLOTTE JENKINS, et al.,**

      **Defendants.**

**Civil Action 2:15-cv-2992**
**Judge Michael H. Watson**
**Magistrate Judge Jolson**

## REPORT AND RECOMMENDATION

This matter is before the Court on cross-motions for summary judgment. For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Dispositive Motion be **DENIED** (Doc. 67) and Defendants' Motion for Summary Judgment be **GRANTED** (Doc. 70). The Court further **RECOMMENDS** that Plaintiff's Motion for a Preliminary Injunction be **DENIED** as **MOOT**. (Doc. 75).

## I. BACKGROUND

Plaintiff Perrin Burse, who was an inmate at Chillicothe Correctional Institution ("CCI") at the time he filed this lawsuit, is no stranger to litigation. Indeed, this case concerns his numerous other pending actions and is related to another matter he filed in this Court, which was terminated on May 22, 2017. (*See Burse v. Robinson*, 2:14-cv-403). As one would imagine, Plaintiff's numerous lawsuits generate a lot of paperwork.

However, CCI, like many institutions, has rules about how much paperwork a prisoner is permitted to maintain. Specifically, Ohio Department of Rehabilitation and Correction ("ODRC") Policy 59-LEG-01 provides the following:

E. **Legal Materials**

1. Inmates are permitted to possess a reasonable amount of general and personal legal materials.

2. General and personal legal materials shall be maintained within the inmate's overall 2.4 cubic feet property limitation as provided in Administrative Rule 5120-9-33, Packages and Property Restriction, and applicable institutional policies. General legal materials are subject to the general possession limits applicable to books, law books, stationery, or writing materials, etc. as provided in Administrative Rule 5120-9-33, Packages and Property Restrictions, and Department Policy 61-PRP-01, Offender Personal Property, and applicable institutional rules and policies.

3. Inmates are required to keep personal legal materials organized by title and case number. Each document associated with a particular case shall be identified with at least the correct case number.

4. Inmates may be required to produce a list of their active cases any time such materials are packed up and placed in storage for any reason. This list shall identify each active case by title of the case, case number, and the court in which the action is pending.

5. If an inmate has personal legal material, which exceeds his/her capacity to store in the space allotted, the inmate may request that he/she be permitted to store the excess personal legal material in a secure location designated by the Managing Officer for such purpose.

   a. A staff person designated by the Managing Officer shall review this request. A request for additional storage shall not be granted unless the volume of the inmate's personal legal material is greater than one half of the inmate's footlocker.

   b. Only personal legal material as defined in this policy may be stored in this manner. The inmate shall provide a list of the active litigation upon request.

   c. Inmates requesting additional space must first make reasonable efforts to reduce the amount of legal material in their possession. (e.g., reducing general material, such as stationery supplies, blank forms, photocopied materials, etc; reducing personal legal material, such as duplicate documents, drafts, outdated or unnecessary correspondence, inactive case files, etc.) All excess material, including inactive case files, must be either mailed out of the institution at the inmate's expense or otherwise disposed of by the inmate.

6. Additional space granted to an inmate is subject to review every 60 days by a staff person designated by the Managing Officer. Inmates may exchange stored materials with those in their immediate possession once every 30 days.

DRC 1362

The parties' conduct relative to this Policy is at the heart of this case.

Plaintiff's claims begin with his temporary move from the A-1 housing unit to the E-2

housing unit at CCI on February 13, 2015, because of asbestos removal. (Doc. 4 at ¶¶ 20–21). According to Plaintiff's allegations, he was authorized to take three boxes with him during the temporary move, but Correctional Officer ("CO") Smith and Sgt. Farrar disagreed. (*Id.* at ¶¶ 21–22) (stating that CO Smith "ha[d] an issue" with the boxes). On Tuesday, February 17, 2015, Sgt. Farrar allegedly stated that he was "going to make an example" of Plaintiff and told him to reduce his legal materials to one box. (*Id.* at ¶ 22).

Although Plaintiff reduced his legal materials by mailing some documents out and discarding others, two boxes remained. (*Id.*). After Sgt. Farrar spoke with Institutional Inspector Corby Free ("Inspector Free") concerning the situation, Sgt. Farrar instructed Plaintiff to put the boxes under his bed and report to Inspector Free on Thursday. (*Id.*). Plaintiff's boxes passed inspection on Wednesday, February 18, 2015. (*Id.* at ¶ 23).

Plaintiff states that, on Thursday, February 19, 2015, he was unable to follow Sgt. Farrar's order to see Inspector Free, because Inspector Free did not come to work that day. (*Id.* at ¶ 22). On the same day, Plaintiff learned that legal mail was being held for him in the mail room. (*Id.* at ¶ 24). Plaintiff states that the legal mail was from the Ohio Innocence Project, and it consisted of trial transcripts, attorney notes, and a DVD from an interview conducted by the Springfield Township Police Department. (*Id.*). According to Plaintiff, only the written materials were released to him because the DVD was required to be released to a Unit Manager. (*Id.*).

Plaintiff explains that time was of the essence because "[t]he instructions were for [him] to review the DVD, and write a Motion, to include the DVD, as newly discovered evidence for his new trial hearing, scheduled by the First District Court of Appeals for March 17, 2015." (*Id.*). Plaintiff states that he looked for, but was unable to find, Unit Manager Clark ("UM

3

Clark"). (*Id*.). Plaintiff informed the Case Manager for the D4 dormitory, Ms. Alford, who attempted to convey the message to UM Clark. (*Id*.).

Plaintiff states that, on Friday, February 20, 2015, UM Clark yelled at him, telling him that he had to reduce his legal materials down to one box by the end of the day. (*Id*. at ¶ 25). Plaintiff attempted to explain to UM Clark that Sgt. Farrar, after speaking with Inspector Free, directed him to place the two boxes under his bed. (*Id*.). Plaintiff claims to have had just fifteen minutes to downsize his legal materials when UM Clark called him into his office. (*Id*.). Plaintiff alleges that UM Clark told the E2 dormitory Case Manager, Ms. Bayless, that Plaintiff "need[ed] to learn the hard way." (*Id*.). UM Clark then directed Plaintiff to "pack up [his] stuff," because he was "going to the hole." (*Id*.).

Plaintiff was placed in segregation, where he claims he was prohibited from viewing the DVD or accessing the legal materials he needed to prepare for the March 17, 2015 hearing. (*Id*.). Plaintiff further alleges that being placed in segregation also prohibited him from taking necessary action to litigate various pending cases. (*Id*. at ¶ 26). According to Plaintiff, he was "released from segregation, with no incident reporting a guilty finding" eleven days later, on Tuesday, March 3, 2015. (*Id*.). Upon his release, Plaintiff states that UM Clark, along with Sgt. Farrar, Sgt. Parnell, and CO Smith, forced him once again "to mail out his legal materials on his pending legal actions…." (*Id*. at ¶ 27).

Plaintiff claims that he was allowed to view the DVD for the first time on Friday, March 6, 2015, fifteen days after CCI received it. (*Id*. at ¶ 28). Plaintiff delivered the DVD for mailing by the institution to the Hamilton County Court of Common Pleas on Monday, March 9, 2015. (*Id*. at ¶ 29). On Wednesday, March 11, 2015, Plaintiff mailed a request for an extension of his new trial hearing scheduled for Tuesday, March 17, 2015. (*Id*. at ¶ 30). Plaintiff received a

denial of his Motion for an Extension of Time on March 16, 2015. (*Id*. at ¶ 31).

The Hamilton County Court of Common Pleas received the DVD on Tuesday, March 17, 2015. (*Id*. at ¶ 32). Plaintiff states that, on Wednesday, March 25, 2015, he "started receiving the contents that were within the box of mail that [he] was forced to mail out." (*Id*. at ¶ 33). Plaintiff states, however, that some of his legal documents "were lost, and never to be returned." (*Id*. at ¶ 34). Plaintiff explains that he needed his legal documents to litigate his pending cases, and Defendants' conduct resulted in rulings adverse to him. (*Id*.). Plaintiff states that, most notably, Defendants' conduct deprived him of the opportunity to present the DVD to the Hamilton County Court of Common Pleas, and the interview with the Springfield Township Police Department on that recording would have exonerated him on the underlying theft convictions. (*Id*.).

There are cross-motions for summary judgment pending. (*See* Docs. 67, 70). Plaintiff also filed a Motion for a Preliminary Injunction. (Doc. 75). According to the ORDC website, Plaintiff was released from CCI on August 28, 2017. *See* Ohio Department of Rehabilitation and Correction Offender Search, available at https://appgateway.drc.ohio.gov/OffenderSearch (last visited September 13, 2017).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a

genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see id.* at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that "genuine" amounts to more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

Plaintiff filed a Dispositive Motion consisting of a recitation of facts, allegations concerning discovery, and numerous exhibits, on April 25, 2017. (*See generally* Doc. 67). Defendants filed their more traditional Motion for Summary Judgment on May 4, 2017. (Doc. 70). Both Motions are ripe for resolution. (*See* Doc. 71 (opposition to Plaintiff's motion), Doc. 72 (opposition to Defendants' motion), Doc. 73 (Defendants' reply)).

### A. Exhaustion of Administrative Remedies

Defendants contend that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Section 1997e of the Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under Ohio Administrative Code § 5120-9-31, inmates "must follow a three-step grievance procedure." *Troche v. Crabtree*, 814 F.3d 795,

799 (6th Cir. 2016); *see also Willis v. Mohr*, No. 1:11-cv-808, 2013 WL 5773932, at *3 (S.D. Ohio Oct. 24, 2013).

The record in this case demonstrates that Plaintiff followed just the first step in the grievance procedure by filing an informal complaint alleging that he was improperly forced to reduce his legal materials and placed in segregation, which impaired his ability to litigate his pending cases.[1] (Doc. 4-2, PAGEID #: 309–310). However, Plaintiff did so on August 5, 2015, some six months after the events giving rise to his complaint. (*See id.*; *see also id.*, PAGEID #: 315 (disposition of grievance)). Ohio Administrative Code § 5120-9-31(K)(1) requires the informal complaint to be filed within "fourteen calendar days of the event giving rise to the complaint…." *Id.* Thus, Plaintiff's informal complaint was untimely. For this reason and because there is no evidence to suggest that Plaintiff made any effort to follow the remaining two steps in the grievance procedure, Plaintiff failed to timely exhaust his administrative remedies. (Doc. 70-7, PAGEID #: 732–33 at ¶¶ 17–18) (declaration of Inspector Free).

Moreover, even if the Court were to consider the merits of Plaintiff's claims, Defendants demonstrate they are entitled to summary judgment.

**B.     Merits**

*1. Denial of Access to the Courts*

Federal courts generally refrain from intervening in the day-to-day operation of state prisons, even when an inmate's constitutional rights are implicated. *Carter v. Wilkinson*, No. 2:05-cv-380, 2007 WL 2874722, at *1 (S.D. Ohio Sept. 27, 2007), adopted by *Carter v. Wilkinson*, No. 2:05-cv-380, 2008 WL 5142998, at *1 (S.D. Ohio Dec. 5, 2008). However,

---

[1] Plaintiff also provides this Court with a second informal complaint he filed on January 27, 2014, concerning "holding legal mail." (Doc. 4-2, PAGEID #: 279). This informal complaint was the subject of Plaintiff's prior lawsuit in this Court, *Burse v. Robinson*, 2:14-cv-403, and because it does not pertain to the facts of this case, the Court need not address it here.

7

federal courts will intervene if the challenged prison regulation is not reasonably related to legitimate penological goals. *Id*. (citing *Turner v. Safler*, 482 U.S. 87 (1987)). Relevant here, regulations that limit the amount of property a prisoner may have are found constitutional unless their effect is to "deprive an inmate completely of the right to access the courts." *Id*. (citing *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992); *Savko v. Rollins*, 749 F. Supp. 1403 (D. Md. 1996)); *see also* Doc. 70-6, PAGEID #: 728 at ¶ 10 (declaration of Unit Manager Shane Clark explaining that the storage limitation exists to avoid "over-crowding and security risks"). In this case, Plaintiff has not alleged a complete denial of his access to the courts based on Defendants' enforcement of its policy, which resulted in Plaintiff discarding or mailing some of his legal materials. *See id*. That alone is a fatal flaw of Plaintiff's claim.

Moreover, even when considering Plaintiff's time in isolation and the delay in viewing the DVD, Plaintiff's claim is still without merit. In order to state a claim for denial of access to the courts, Plaintiff must show that he suffered an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). More specifically, "a prisoner must demonstrate actual prejudice to pending or contemplated litigation," that pertains to the inmate's conviction, sentence, or the conditions of confinement. *See id*. at 355; *see also Gyekye v. Gilliam*, No. 2:11-cv-353, 2012 WL 1900927, at *8 (S.D. Ohio May 24, 2012) (stating that "the injury requirement is not satisfied by just any type of legal claim" and is limited to situations where the action prevented the pursuit or caused the rejection "of a specific non-frivolous criminal defense, direct appeal, habeas corpus application, or civil rights action"), adopted by *Gyekye v. Gilliam*, No. 2:11-cv-353, 2012 WL 5378826, at *1 (S.D. Ohio Oct. 30, 2012).

Plaintiff generally alleges injury in the following cases: *Burse v. Vaughn*, C1400139; *Burse v. Lambert*, C1400161; *Burse v. Haas*, C1400543; *Burse v. Bennett*, A1307236; *Burse v.*

8

*Garrison*, A1307236; *Burse v. Robinson*, 2:14-cv-403; and *State of Ohio v. Burse*, C1400356 (Doc. 4 at ¶ 26). Several of these cases do not constitute a challenge to his conviction, sentence, or the conditions of his confinement. *See, e.g.*, *Burse v. Vaughn*, C1400139 (breach of contract); *Burse v. Lambert*, C1400161 (breach of contract); *Burse v. Haas*, C1400543 (malpractice); and *Burse v. Bennett*, A1307236 (malpractice); *Burse v. Garrison*, A1307236 (malpractice).

*Burse v. Robinson*, 2:14-cv-403 is instructive here because in that case, like in this one, Plaintiff alleged problems litigating various state proceedings while incarcerated at CCI. (*See Robinson*, 2:14-cv-403, Doc. 94) (Watson, J.). Although the relevant events occurred in 2013 and 2014, Plaintiff relied on his placement in segregation in February 2015 to demonstrate a fear of retaliation which rendered him unable to exhaust the grievance procedure. (*Id*. at 14–15). The Court held that even if it were to accept as true that Plaintiff's placement in segregation in February 2015 was retaliatory, he failed to demonstrate that it was related to the exercise of his constitutional right. (*Id*.) (adding that "the Court fail[ed] to see how a later incident" could have caused Plaintiff's failure to grieve earlier conduct). Ultimately, the Court entered summary judgment in favor of Defendants and against Plaintiff, and the matter was terminated for reasons unrelated to his alleged ability to litigate during the relevant time. (*Id*. at 20). Thus, Plaintiff demonstrates no actual injury in *Burse v. Robinson*, 2:14-cv-403 to support his denial of access to courts claim. (*Id*.).

Finally, Plaintiff focuses primarily on *State of Ohio v. Burse*, C1400356, arguing Defendants' actions impaired his ability to prepare for a new trial hearing scheduled for March 17, 2015 in that case. (Doc. 4 at ¶ 25). Although Plaintiff produced a letter indicating that such a hearing was scheduled to take place as of January 9, 2015 (*see* Doc. 4-2, PAGEID #: 263), on February 12, 2015, the Ohio Court of Appeals issued an entry overruling his *pro se* motion to

convey him for oral argument (Doc. 73-1, PAGEID #: 779). The February 12, 2015 decision stated:

> This cause came on to be considered upon the *pro se* motion of the appellant to convey him to Court for oral argument on March 17, 2015. The Court finds that the motion is not well taken and is overruled. The Court further orders that the case be submitted on the briefs in accordance with Local Rule 21.1.

(*Id*.). Plaintiff filed his brief on October 9, 2014. (*See* Doc. 73 at 5).

On March 11, 2015, Plaintiff filed a "motion to extend time due to [CCI] unjustly committing [him] to isolation for 12 days in an attempt to deny [him] access to the courts." (Doc. 4-2, PAGEID #: 272). In the motion, Plaintiff requested time to file a supplemental brief and claimed an extension was necessary because he "was delayed in receiving and viewing the newly discovered DVD of the initial interview with Detective Cantron of the Springfield Township Police Dept." (*Id*.). Plaintiff argued that the delay was caused by his "unjust and manipulated insolation." (*Id*.). He likewise stated that he "was in the process of obtaining legal counsel for the appearance of the March 17, 2015 hearing, when he was placed in isolation." (*Id*.).

The Ohio Court of Appeals denied Plaintiff's motion, observing that it had "not granted [him] leave to file a supplemental brief." (*Id*., PAGEID #: 273). The Ohio Court of Appeals also stated that the matter was "scheduled for submission to the Court on March 17, 2015." (*Id*.). Based on the foregoing, Plaintiff is unable to demonstrate actual injury in this case.

Although there is no doubt that a prisoner has a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), Plaintiff fails to set forth evidence to support his claim that his right was violated here. In particular, Plaintiff fails to demonstrate that being deprived of his legal materials or placed in segregation caused him to suffer actual prejudice in any of his cases. Consequently, Plaintiff's denial of access to the courts claim fails.

### *2. First Amendment Retaliation*

In order to establish a claim for First Amendment retaliation, a plaintiff must demonstrate that (1) he was engaged in protected conduct; (2) the defendant took the adverse action against him that would deter a person of "ordinary firmness from continuing to engage in that conduct;" and (3) "the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010), quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A prisoner engaged in protected conduct may still be disciplined if the discipline is reasonably related to legitimate penological objectives. *Griffin v. Berghuis*, 563 F. App'x 411, 416 (6th Cir. April 21, 2014); *see also Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001) ("A prisoner retains First Amendment rights that are not inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system.").

Here, Plaintiff fails to demonstrate that Defendants were motivated in part to place him in segregation because he exercised his constitutional right to access the courts. Rather, the record reflects that Plaintiff was given a conduct report for violating ODRC Policy 59-LEG-01, which was reasonably related to legitimate penological objectives of avoiding overcrowding and reducing security risks. (Doc. 4-2, PAGEID #: 265 (conduct report); Doc. 70-6, PAGEID #: 728, at ¶ 10 (declaration of UM Clark); *see also* Doc. 70-1, PAGEID #: 720 (noting Plaintiff's apparent confusion over permission to hold the legal locker boxes for a certain period of time); Doc. 4-2, PAGEID #: 315 (disposition of grievance finding proper enforcement of ODRC Policy 59-LEG-01)).

Further, a memo dated March 5, 2015 explained to Plaintiff:

> You were placed in segregation for refusing a direct order to reduce your legal materials. Mr. Clark was not aware of the DVD. Unit staff has been instructed to retrieve the DVD from the mailroom and set up a time when you can review the material.

(Doc. 70-1, PAGEID #: 720). Thus, the evidence reflects that UM Clark, the individual who placed Plaintiff in segregation, had no knowledge of the DVD or its desired use. (*See id*.).

It is worth noting that Plaintiff also made, and the Court rejected, the alternate argument in *State of Ohio v. Burse*, C1400356, that the same placement in segregation was in retaliation for his use of the grievance procedure. (*See* Doc. 94 at 15 in *State of Ohio v. Burse*, C1400356). Putting aside Plaintiff's speculation as to what motivated his placement in segregation, evidence supports Defendants' position that he was placed there for his failure to adhere to a policy that is reasonably related to legitimate penological objectives. (*See* Doc. 70-7, PAGEID #: 730–32) (declaration of Inspector Free). Because Plaintiff fails to provide any evidence in support of his theory that the adverse action was motivated at least in part by his protected conduct, his First Amendment retaliation claim fails.

### C. Personal Involvement and Qualified Immunity

Having recommended that Plaintiff failed to exhaust his administrative remedies and that his claims fail on the merits, the Court need not address Defendants' remaining arguments concerning lack of personal involvement and qualified immunity.

### D. Injunctive Relief

Finally, Plaintiff moved for a preliminary injunction "to maintain the status quo" and to prevent Defendants from inhibiting him from "effectively participating in court proceedings…." (Doc. 75). The ODRC website reveals that Plaintiff has been released from custody at CCI. Consequently, the Motion for a Preliminary Injunction should be denied as moot.

## IV. CONCLUSION

Based upon the foregoing, the Court **RECOMMENDS** that Plaintiff's Dispositive Motion be **DENIED** (Doc. 67) and Defendants' Motion for Summary Judgment be **GRANTED**

(Doc. 70). The Court further **RECOMMENDS** that Plaintiff's Motion for a Preliminary Injunction be **DENIED** as **MOOT**. (Doc. 75).

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date: September 13, 2017  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE